1

HON. MARSHA J. PECHMAN

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

9

10

11

HEATHER HALEY, as an individual and as a
representative of the classes,

Case No. 2:13-cv-01915-MJP

12

Plaintiff,

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

13

v.

14

TALENTWISE, INC. f/k/a/ TALENTWISE
SOLUTIONS, LLC f/k/a INTELIUS
SCREENING SOLUTIONS, LLC, ,

15

Note on Motion Calendar:
September 5, 2014

16

Defendant.

17

**ORAL ARGUMENT REQUESTED**

18

19

**INTRODUCTION**

20

Defendant's summary judgment motion is based on factual assertions that are

21

contradicted by its own documents and testimony.  Defendant asserts that it has always

22

interpreted the FCRA as allowing it to report dismissed charges past seven years so long as the

23

dismissed charges relate to a matter where the defendant was convicted of at least one charge.

24

This assertion is inconsistent with the undisputed fact that, after receiving a legal opinion

25

regarding reporting dismissed charges from a prominent FCRA defense attorney in early 2012,

26

Defendant's compliance department initiated a policy change such that it would not report

27

these dismissed charges.  Defendant's motion asserts that this policy change was for "business"

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

reasons unrelated to FCRA compliance.  But that is not what Defendant told its vendors (who upload information into Defendant's database) about the policy change.  Nor is it consistent with internal company documents, which state that the policy change was based on the legal advice received by the company.  It is also inconsistent with how Defendant, asserting attorney-client privilege, has redacted or withheld from production numerous documents related to the implementation of the policy change.  The record further shows that, notwithstanding the legal advice it received, and in violation of its own policy, Defendant continued to include these dismissed charges in its reports well into 2013, when it issued the report regarding Plaintiff. These facts, and the Defendant's removal of the dismissed charges from Plaintiff's report after she requested a copy, are more than enough for a reasonable trier of fact to infer that Defendant's violations were willful.  The factual basis for Defendant's motion is disputed, and Defendant's legal argument should be rejected for the same reasons its motion to dismiss was denied.  Defendant's motion should be denied.

## FACTS

### I. DEFENDANT KNEW REPORTING DISMISSED CHARGES VIOLATED THE FCRA.

Defendant's motion is largely a repackaging of Defendant's motions to dismiss and for reconsideration, with one exception: the motion at issue here relies on declarations and deposition testimony from Elle Macapia, Defendant's Director of Compliance ("Macapia"), and Carl Cogdill, Defendant's Director of Screening Operations ("Cogdill").  These employees claim that Defendant has consistently interpreted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") as allowing it to report dismissed charges so long as the dismissed charges relate to a matter where at least one other charge resulted in a conviction.  *See generally* Def.'s Mem. in Supp. Summ. J., ECF No. 46 ("Def.'s Mem.") at 6-7.  These witnesses acknowledge that Defendant changed its policy in March 2012 such that it would no longer report such dismissed charges, but assert that this change was implemented for business reasons unrelated to the FCRA's requirements.  *See* Macapia Decl., ECF No. 47, at ¶ 13

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  (stating that the 2012 policy change was implemented to "streamlin[e] . . . the reporting process

2  to conform to customer requests, ensure uniform compliance with more restrictive state and

3  local laws, and reduce the potential for unnecessary consumer confusion, complaints, and

4  lawsuits" and that "TalentWise did not believe this change was required by the FCRA"); Def.'s

5  Mem. at 6-7.

6      The record is not consistent with these assertions.  For example, Cogdill testified at his

7  deposition that Defendant changed its policy in 2012 after receiving a legal opinion about

8  reporting dismissed charges:

9      MR. BRYDEN: Let's talk about the entire class period which begins October
10     24th, 2011. Do you know if TalentWise had received a legal opinion with respect
       to reporting dismissed charges at that time?
11
       MR. FARMER: Same objection, same instruction to the witness.
12
       THE WITNESS: I can't say exactly when they received guidance.
13
       BY MR. BRYDEN:
14     Q. Can you tell me roughly when TalentWise received guidance with respect to
       reporting dismissed charges?
15
16     A. I can tell you that we changed our policy in March of 2012 so that I would
       assume it was sometime before that.
17
   Ex. A ("Cogdill Dep.") at 63:1-13.[1]
18
19     Defendant's internal documents show that this legal advice was from Pam Devata,

20  whose online biography states she counsels consumer reporting agencies on compliance with

    the FCRA.  Ex. B.  After receiving this legal advice, ████████████████████████
21
    ████████████████████████████████████████████████████████████████████████████
22
    ██████████
23
           ████████████████████████████████████████████████████████████████
24
    ████████████████████████████████████████████████████████████████████████████
25
    ████████████████████████████████████████████████████████████████████████████
26  ─────────────────────────
    [1] All exhibits cited herein are attached to the Declaration of Daniel C. Bryden ("Bryden Decl.").
27
    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
    DEFENDANT'S MOTION FOR PARTIAL SUMMARY
    JUDGMENT - 3
    CASE NO. 2:13-CV-01915-MJP

    NICHOLS KASTER, PLLP
    4600 IDS Center, 80 S 8th Street
    Minneapolis, MN 55402
    TEL. 612-256-3200 • FAX 612-338-4878

1

██████████████████████████████████████████████

2  Ex. C.  ████████████████████████████████████████████

3  ████████████. *Id.*

4       Some of Defendant's vendors, however, were either unwilling or unable to comply with

5  this change in policy.  When this came to Macapia's attention, she emphasized that Defendant

6  could face liability *under the FCRA* if it continued to report these dismissed charges:

7       Would you reach back out to our vendors and send them a friendly reminder not
       to include dismissed, nolle prose, etc., charges in their results?  There is a
8       current lawsuit (not ours thank goodness) where the CRA included 2 dismissed
       charges w/a conviction.  They're getting busted on reporting the dismissed
9       charges ☹

10  Ex. D.  (emoticon in original).

11       In May of 2012, two months after Defendant changed its policy, Macapia authored an

12  internal document that summarized FCRA compliance issues discussed at a conference hosted

13  by the National Association of Professional Background Screeners ("NAPBS").   Ex. E.

14  Entitled "NAPBS Compliance Review," this document indicates that reporting "dismissed

15  charges" could be construed as reporting "misleading information."  Ex. E at NKA0011827;

16  Ex. F, ("Macapia Dep.") at 70-71.  On the next page, after identifying this compliance issue,

17  Macapia's report indicates that Defendant's "process" in response to this concern has been,

18  among other things, to request that its vendors not report dismissed charges.  Ex. E at

19  NKA0011828.  Shana Nishihira, who is a Quality Assurance & Compliance Supervisor for

20  Defendant, prepared a similar PowerPoint presentation about the 2012 NAPBS conference that

21  indicated that it could be "misleading" to include "[d]ismissed counts or original arresting

22  charge information that accompanies conviction information" in a report.  Ex. G at

23  NKA0037466.

24

25

26

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4
CASE NO. 2:13-CV-01915-MJP

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

A June 2013 email from Macapia to what appears to be one of Defendant's customers also indicates that Defendant changed its reporting policy at least in part because it was concerned that the prior policy violated the FCRA:

> We will not report Non-Conviction records (arrest, dismissals, nolle pros, etc.)
> To increase efficiency, reduce production costs, and protect us from *violating FCRA* or state laws, our vendors are no longer providing these records.

Ex. H at NKA0039537 (emphasis added). When the customer responded by asking to "better outline our reasoning as to why the changes are being made now," Macapia explained: "[r]egardless of the contract, we no longer will violate state or fcra laws in our reporting." *Id.* at NKA0039535-36.

Ms. Nishihira also understood Defendant's policy regarding reporting dismissed charges to be required by the FCRA:

> Nishihara: "Just a reminder that per FCRA TalentWise <u>does not </u>report non-conviction information older than 7 years to any client."

> Tamara Anderson: "Are we supposed to be removing non conviction counts from xml cases?  Such as one count was conviction but another was non conviction (like a deferral or dismissal)?"

> Nishihara: "Yes when the XML is editable (RJI, Argus, WSS)."

Ex. I.  In a document titled, "Worksite Enforcement and Compliance Focus on the Future," Nishihira noted the following:

> 'any other item of adverse information'

>> Non-convictions – infractions, violations, summary offenses.  Inclusion even w [sic] a case that has a conviction charge you are potentially violating FCRA.

Ex. J at NKA 0047159.[2]

---

[2]  Although not apparent from the face of the document, the metadata produced with the document indicates that the author of the document was Shana Nishihira.

Some of Defendant's vendors, however, were either unable or unwilling to comply with Defendant's request to stop reporting dismissed charges.  Ex. K (email noting that vendor Omni Data Retrieval was not complying with policy).  One such vendor was Omni Data Retrieval, which is the vendor that provided the information in Plaintiff's report.  Macapia Dep. at 36. While Defendant was working on a long-term technical feature that would have made it easier to automate the removal of dismissed charges from the reports, throughout the class period it always had the ability to manually remove dismissed charges from its reports.  Ex. L at 5-6 (describing 15 minute process for manually removing "unreportable" information).[3]  But rather than manually removing the dismissed charges from its reports, Defendant simply included the dismissed charges in the reports it generated.  Macapia Dep. at 36-38.  This practice was a violation of Defendant's own policy, yet it persisted throughout the class period.

## II. DEFENDANT'S INVOCATION OF ATTORNEY-CLIENT PRIVILEGE CONTRADICTS THE FACTUAL ASSERTIONS IT MAKES IN ITS MOTION.

Defendant has asserted attorney-client privilege with respect to numerous documents that relate to the implementation of its March 2012 policy change.  Ex. N.  The assertion of privilege in this context further undermines Defendant's assertion that the policy change had nothing to do with concerns that reporting the dismissed charges violated the FCRA.

For example, Defendant redacted or refused to produce internal company emails and documents regarding the 2012 policy change, asserting that these documents reflect the "advice of outside counsel, Pam Devata, relating to reporting rules under the Federal FCRA."  *See e.g., id.* at 6.  The unredacted portions of these emails, however, do not mention any purely "business" reason for the policy change.  Exs. O-S.  To the contrary, Defendant's assertion of

---

[3]  At the hearing on the motion to dismiss, Defendant's counsel stated with respect to Defendant's reports: "[i]f you wanted to fix this so that it didn't disclose the dismissal, you really couldn't do it, because you would have to redact it in ways that would render it meaningless."  Ex. M at 9.  This statement is at odds with reality.  In fact, Defendant had already implemented a policy to no longer report such charges.  It is also undisputed that Defendant did have the ability to manually remove dismissed charges from the report, even for those vendors whose data had not been "integrated" into Defendant's system.  Macapia Dep. at 38; Ex. L at 5-6.

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  the attorney-client privilege with respect to these documents demonstrates that the policy

2  change was implemented based on the FCRA compliance advice it received from Ms. Devata.

3       The emails Defendant sent to its vendors announcing the 2012 policy change

4  demonstrate this point.  Exs. T-X.  Asserting attorney-client privilege, Defendant redacted the

5  portion of these emails where it explains to its vendors the reason for the policy change:

6

7  Our Compliance department has instructed us we will no longer be including Dismissed, Nolle prosequi ,Nol Pros in our reports.
   Redacted
8  ████████████          ████████████

9

10 Ex. T.  Defendant's privilege log asserts that this redaction, and similar redactions to other

11 vendor emails, were proper because the email was sent "to [a] vendor with [a] common interest

12 in avoiding litigation arising under state and federal FCRA laws."  *See e.g.*, Ex. N at 8.

13       After informing opposing counsel that she did not agree Defendant's communications

14 with its vendors were privileged, Plaintiff subpoenaed the vendors.  Defendant did not move to

15 quash the subpoenas.   SJV & Associates, one of the vendors subpoenaed, produced an

16 unredacted copy of the email (which was quoted above):

17

18  ████████████████████████████████████

19

20 Ex. C. (emphasis added).  The italicized words were redacted by Defendant.

21       This unredacted email is remarkable for two reasons.  ████████████████

22 ████████████████████████████████████

23 ████████████████████████████████████

24 ████████████████████████████

25       In contrast to all the withheld and redacted documents relating to Defendant's

26 implementation of the 2012 policy change, Defendant has submitted no documents that support

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7
CASE NO. 2:13-CV-01915-MJP

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   its assertion that business needs drove the policy change.  If, in fact, the 2012 policy change

2   was implemented for purely business reasons, one would expect memoranda and business plans

3   analyzing the cost savings of the policy change, and emails about how much more efficient the

4   reporting would be after the policy change.  And one would expect a business group to be

5   driving the change, not the compliance department.  Defendant does not submit such

6   documentation.  Instead, it submits self-serving testimony from two of its employees, but then

7   withholds from production the documents that impeach their testimony.[4]

8   **III.   DEFENDANT'S REMOVAL OF THE DISMISSED CHARGES FROM PLAINTIFF'S REPORT.**

9       Finally, in addition to all of the above, it is reasonable to infer from Defendant's

10  removal of the dismissed charges from Plaintiff's report after she requested a copy that it knew

11  reporting the charges presented a FCRA compliance problem.  This Court held as much in

12  denying Defendant's motions to dismiss and for reconsideration.  Order Granting in Part and

13  Denying in Part Def.'s Motion to Dismiss, ECF No. 38, at 9 (finding that willful violation

14  could be "reasonably infer[red]" from allegation that "Talentwise removed the dismissed

15  robbery charge from the consumer report it sent to her, suggesting that Talentwise knew it

16  could not legally disclose that charge").

17      Defendant's evidence to the contrary raises more questions than it answers.  Defendant

18  claims that it decided to treat her request for her file as a dispute "out of an abundance of

19  caution."  Def.'s Mem. at 8.  Defendant then claims that it removed the dismissed charges

20  merely to make the report compliant with its 2012 policy change.  *Id*.  Defendant offers no

21  explanation as to why it did not make Plaintiff's report compliant with Defendant's 2012 policy

---

23  [4] Since Defendant has asserted attorney-client privilege over certain documents, it should not be permitted on reply
    or at trial to waive that privilege and use the previously withheld material.  To do so would be unfair to Plaintiff
24  and would allow Defendant to impermissibly use the privilege as both a sword and a shield.  *See Lexington Ins.
    Co. v. Swanson*, C05-1614MJP, 2007 WL 2121730 at *4 (W.D. Wash. July 24, 2007) (Pechman, J.) (refusing to
    allow party to "use its privilege as both a sword and shield") (Pechman, J.); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162
25  (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used as a sword and a
    shield."); *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-cv-05129, 2013 WL 1366037, at *2 (N.D. Cal.
26  Apr. 3, 2013) (stating that it would be "manifestly unfair" to allow party "to waive privilege at trial . . . having
    prevented discovery into privileged matters").

27

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   change before it sent the report to her employer.  Defendant's self-serving testimony does not

2   rebut the natural inference that flows from Defendant's removal of the dismissed charges after

3   it became apparent that Plaintiff intended to assert her rights under the FCRA.  It is still

4   reasonable to infer that Defendant was trying to cover its tracks because it knew it faced

5   potential liability for reporting the dismissed charges.

6   **IV.   DISCOVERY ON DEFENDANT'S INTERPRETATION OF THE FCRA IS ONGOING.**

7       Defendant filed its summary judgment motion five months before the close of

8   discovery, while the parties were in the midst of discovery on issues relevant to the motion.

9   Plaintiff served her first document requests on February 20, 2014.  Bryden Decl. ¶ 3; Ex. Y.

10  Included among those requests was a request for all documents "contain[ing] any policies

11  and/or procedures that have been in effect at any time during the Class Period . . . which pertain

12  to Talentwise's reporting of dismissed charges and other items of adverse information that

13  predate the report by more than seven years."  *Id.*, Req. No. 2.  Plaintiff also sought documents

14  showing Defendant's implementation of its policy with respect to reporting dismissed charges,

15  including "documents which memorialize or describe the methods by which you educate, train,

16  and/or evaluate employees regarding compliance with those policies and procedures."  *Id.*, Req.

17  No. 3.

18      Defendant produced documents in response to this first set of document requests on a

19  "rolling basis."  Bryden Decl. ¶ 4.  In April and May of 2014, Defendant produced documents

20  on seven different occasions.  *Id.*  Because of the rolling document production, the Macapia and

21  Cogdill depositions were rescheduled several times.  *Id.*  These depositions were rescheduled

22  because Plaintiff's counsel wanted time before the depositions to review the document

23  production.  *Id.*  The depositions were finally taken on June 4 and 5, 2014, and wherein Plaintiff

24  first learned of the 2012 policy change.  *Id.*  Both Cogdill and Macapia stated unequivocally

25  that the policy about reporting dismissed charges was set forth in written documents.  Cogdill

26  Dep. at 43; Macapia Dep. at 59-60.  As of the filing of Defendant's motion for summary

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9
CASE NO. 2:13-CV-01915-MJP

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   judgment, however, Defendant had not produced a document that clearly sets forth this policy.

2   Bryden Decl. ¶ 5.

3       The week after Macapia and Cogdill's deposition, Plaintiff served a second set of

4   interrogatories and document requests, requesting more information about Defendant's

5   communications with its vendors regarding reporting dismissed charges and Defendant's ability

6   to edit its vendor's reports.  Bryden Decl. ¶ 6, Ex. Z at Req. No. 57; Ex. AA at Interrog. Nos. 4,

7   5.  As of the filing of Defendant's motion for summary judgment, Defendant's response to the

8   second set of discovery requests was still outstanding.  Bryden Decl. ¶ 6.

9       Then, on July 14, 2014, only three days after filing its motion for partial summary

10  judgment, Defendant produced almost 19,000 pages of documents, by far its most voluminous

11  document production.  *Id.* ¶ 7.  On August 6, 2014, Defendant produced another 10,002 pages

12  of documents.  *Id.* ¶ 8.  Plaintiff's law firm hired a dedicated attorney to help with completing

13  this massive document review, which was not completed until August 18, 2014.  *Id.*  It was not

14  until August 15, 2014 that Defendant's counsel indicated that Defendant had produced *all* the

15  documents it intended to produce which it deemed discoverable and responsive to Plaintiff's

16  document requests.  *Id.* ¶ 9.  Included in these later document productions were many of the

17  documents discussed above, wherein Defendant announces the 2012 policy change to its

18  vendors, and the internal documents discussing the 2012 policy change.  *Id.* ¶ 10.

19      While Plaintiff believes the existing record is sufficient to deny Defendant's motion for

20  summary judgment now, Defendant's motion is also premature because Plaintiff intends to take

21  additional relevant discovery.  For example, Plaintiff intends to take the deposition of Judy

22  Fenney, who sent the email to Defendant's vendors regarding Defendant's 2012 policy change,

23  and the deposition of Shana Nishihira, Defendant's Quality Assurance & Compliance

24  Supervisor, who was copied on many of the communications regarding the 2012 policy change

25  and who has authored a document interpreting the FCRA to not allow the reporting of

26  dismissed charges even when associated with a conviction.  *Id.* ¶ 11, Ex. J at NKA 0047159.

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10
CASE NO. 2:13-CV-01915-MJP

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   Further, Plaintiff is considering deposing Macapia again as many of the documents relevant to

2   Defendant's interpretation of the FCRA were not produced until after her deposition.  *Id.*  It is

3   possible that these depositions would reveal additional categories of relevant documents or

4   communications.  Given the timing of Defendant's document production and the discovery

5   deadline in December of 2014, it is not unreasonable that Plaintiff has yet to complete her

6   discovery on Defendant's interpretation of the FCRA.

7   <u>**ARGUMENT**</u>

8   **I.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ON THE MERITS.**

9        A party is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when there is no

10  "genuine issue of material fact" and the undisputed facts warrant judgment for the moving

11  party as a matter of law.  *See* Fed. R. Civ. P. 56(c).  In addressing a motion for summary

12  judgment, "the court must view the evidence in the light most favorable to the party against

13  whom summary judgment is sought and must draw all reasonable inferences in [its] favor."

14  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving

15  party has the initial burden of demonstrating the absence of a disputed issue of material fact.

16  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the

17  non-moving party must present "specific facts showing that there is a genuine issue for trial."

18  Fed. R. Civ. P. 56(e).

19       "Willfulness under the FCRA is generally a question of fact for the jury."  *Edwards v.*

20  *Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007), (*citing Guimond v. Trans Union*

21  *Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995)); *see also Starkey v. Experian Info.*

22  *Solutions, Inc.*, ___ F. Supp. 2d ___, No. SACV 13-59-JLS RNBX, 2014 WL 3809196 at *5

23  (C.D. Cal. Jan. 8, 2014) (same).  Under the FCRA, "a 'willful violation' is one that was done

24  knowingly or recklessly."  Order on Def.'s Mot. Dismiss at 9 (citing *Safeco Ins. Co. v. Burr*,

25  551 U.S. 47, 57 (2007)).  Under *Safeco*, if the defendant has an "objectively unreasonable"

26  interpretation of the FCRA, then it acted recklessly when it violated the statute.  *Safeco*, 551

27  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11
CASE NO. 2:13-cv-01915-MJP

U.S. at 70-71.  Even where a defendant puts forth an argument that there is a reasonable interpretation of the FCRA that would permit its behavior, however, that defendant is not entitled to a *Safeco* defense unless the proffered interpretation was actually the defendant's interpretation at the time of the alleged violation.  *See Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 687 (N.D. Ga. 2013) (finding *Safeco* defense to be unavailable where defendant's interpretation of the FCRA prohibited defendant's behavior when the violation occurred).  As stated by this Court in denying Defendant's motion for reconsideration, "determining whether TalentWise's interpretation is objectively reasonable would require factual determinations (i.e., testimony from Talentwise's employees regarding Defendant's interpretation)."  Order on Mot. Reconsideration, ECF No. 40, at 3; *see also Claffey v. River Oaks Hyundai, Inc.*, 494 F. Supp. 2d 976, 978-79 (N.D. Ill. 2007) ("[T]he 'objective' standard for recklessness that the Court adopted does not render irrelevant evidence of the party's actual understanding of the law."); *Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 WL 4316950, at *7 (N.D. Ill. Sept. 15, 2008) (denying a motion for summary judgment where, among other reasons, a defendant had not offered evidence that it "actually adopted a particular construction" of the FCRA); *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965 at *4 (D. Md. Jan. 25, 2012) (denying motion to dismiss because there was "no evidence that [defendant] actually adopted the interpretation of [the FCRA provision] that it proposes here").

As discussed below, partial summary judgment is not appropriate here because there is a dispute of material fact as to Defendant's interpretation of the FCRA.  Further, Defendant is not entitled to summary judgment under *Safeco* because its proffered interpretation of the FCRA is not objectively reasonable.

**A.    There Is a Dispute of Material Fact as to Defendant's Interpretation of the FCRA.**

As set forth above, the record contradicts the facts asserted by Defendant in its motion for summary judgment.  The above-cited evidence indicates that Defendant interpreted the

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  FCRA to forbid the reporting of dismissed charges.  At a minimum, it creates an issue of

2  material fact as to what Defendant's interpretation of the FCRA was.  Defendant is not entitled

3  to invoke a *Safeco* defense because such a defense depends on Defendant's actual interpretation

4  of the FCRA squaring with its proffered interpretation.  Based on the existing record,

5  Defendant's actual interpretation of the FCRA (that reporting dismissed charges was forbidden)

6  contradicts Defendant's current position (that it thought reporting dismissals was allowed under

7  the FCRA).  Accordingly, Defendant's motion for summary judgment must be denied.

8      **B.**    **Defendant's Proffered Interpretation of the FCRA is Objectively Unreasonable.**

9      Even if there were not a strong evidentiary record demonstrating that Defendant knew

10  its conduct violated the FCRA but did it anyway, Defendant's motion for summary judgment

11  should be denied because its proffered interpretation of the statute is not objectively reasonable.

12  Defendant's purported interpretation is contrary to the plain language of the statute, and its

13  purported interpretation has no grounding in the FCRA.

14      1.    <u>The Plain Language of the FCRA Does Not Permit the Reporting of</u>

15  <u>Dismissed Charges That Antedate the Report by More Than Seven</u>

16  <u>Years.</u>

17      Under the FCRA, a consumer reporting agency cannot report "records of arrest" or

   other "adverse item[s] of information" that antedate the report by more than seven years.  15

18  U.S.C. § 1681c(a)(2), (5).  This Court found that the "plain language" of the FCRA mandates

19  that a "dismissed charge from over seven years ago is both a 'record of arrest' and 'adverse'

20  information that Talentwise is prohibited from including in the consumer report.'"  Order on

21  Def.'s Mot. to Dismiss at 4-5.  Since this Court's decision, two other decisions have agreed

22  with this Court.  Judge Guzman of the Northern District of Illinois found that dismissed charges

23  that antedate the report by more than seven years cannot be reported under the "express

24  language of the FCRA":

25      A consumer reporting agency may not include any adverse item of information
26      other than a "record of conviction" not a "record of dismissed charges." Under

27  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
   DEFENDANT'S MOTION FOR PARTIAL SUMMARY
   JUDGMENT - 13
   CASE NO. 2:13-CV-01915-MJP

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

[Defendant]'s interpretation, any adverse information could be included in the report as long as it happened to be included on a 'record of conviction.' The Court is unwilling to construe the statute in this manner . . . .

*Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3 (N.D. Ill. July 17, 2014).  More recently, Judge Alsup of the Northern District of California reached the same conclusion:  "In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go unreported.  On this specific issue, this order accepts the view of plaintiff's counsel and Judge Pechman."  *Dunford v. Am. DataBank, LLC*, C 13-03829 WHA, 2014 WL 3956774, at *14 (N.D. Cal. Aug. 12, 2014).

Additionally, the Federal Trade Commission ("FTC") has made clear its view that criminal history other than convictions is "adverse," noting in its 2011 report on the FCRA that "[a] CRA is *not permitted to report **criminal records** other than convictions* beyond seven years, even where the CRA is providing information to an employer that state or federal law requires to check criminal records beyond seven years."  FTC, 40 Years of Experience with the Fair Credit Reporting Act  57 (July 2011) (emphasis added).

This is consistent with the Department of Justice's position as expressed in a recent brief in a case where the consumer reporting agency asserted a First Amendment right to report dismissed charges.  *See Dowell v. Gen. Info. Servs, Inc.*, 13-CV-02581-L-BGS, Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA).

The legislative history also demonstrates that dismissed charges that antedate the report by more than seven years are not reportable.  Prior to 1998, the FCRA forbade reporting records of conviction that were more than seven years old.  *See* 15 U.S.C. § 1681c(a) (1996).  When Congress amended the FCRA in 1998 to allow the reporting of convictions, it intended the amendment to be a modest change to the general rule against reporting old information.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14
CASE NO. 2:13-CV-01915-MJP

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  For example, Senator Nickels, speaking in support of the amendment, stated that "this bill also

2  includes a provision that will allow *criminal convictions* to be reported past 7 years."  144

3  Cong Rec. S11639 (daily ed. Oct. 6, 1998) (statement of Sen. Nickels) (emphasis added).  In

4  the House, Congressman Leach said that, under then-current law, "no records of criminal

5  activity, including convictions, may be reported if they antedate the report by more than seven

6  years. . . . Under the bill, convictions of crimes from the seven-year obsolescence period would

7  be exempted."  144 Cong Rec. H10218, H10219 (daily ed. Oct. 8, 1998) (statement of

8  Congressman Leach).

9      Congressman Leach's contrast of "records of criminal activity," and "convictions of

10  crimes" is especially telling.  While recognizing that existing law barred all antedated "records

11  of criminal activity," he stressed that the amendment permitted reporting of only a subset of

12  records of criminal activity—records of conviction.  Had Congress intended to make all

13  "records of criminal activity," exempt from the rule, which would include items such as

14  dismissed charges, it could have easily done so—and Leach's statement amply demonstrates

15  that Congress understood the distinction.  In describing the change, Congressman LaFalce

16  described it as a narrow departure from the existing law: "While I believe we need to be

17  extremely cautious in accepting any proposal to revise the Fair Credit Reporting Act . . . [t]he

18  exceptions that the bill creates from current FCRA requirements are justifiable and are *very*

19  *narrowly targeted*."  144 Cong Rec. H10218, H10219 (daily ed. Oct. 8, 1998) (statement of

20  Congressman LaFalce) (emphasis added).

21      Because the plain text of the FCRA unambiguously does not permit the reporting of

22  dismissed charges that antedate the report by more than seven years, Defendant's invocation of

23  *Safeco* is unavailing.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010)

24  (upholding finding of willfulness and holding that where statute is clear, a lack of appellate

25  authority "merely establishes that the issue has not been presented to a court of appeals before"

26  and credit reporting agency does "not receive a pass because the issue has never been

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15
CASE NO. 2:13-CV-01915-MJP

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

decided"); *Reardon v. Closetmaid Corp.*, No. 2:8-cv-01730, 2013 WL 6231606, *10-11 (W.D. Penn. Dec. 2, 2013) (awarding summary judgment to class plaintiffs on issue of willfulness because statutory text was unambiguous, and finding defendant's interpretation to be objectively unreasonable); *Gillespie*, 2008 WL 4316950, at *6-7 (rejecting *Safeco* defense despite lack of appellate guidance because provision at issue had a "readily ascertainable meaning, namely the plain meaning of the statutory language"). Accordingly, Defendant's motion for summary judgment must be denied.

### 2.   Defendant's Interpretation Has No Basis in the FCRA.

Defendant's current argument about why its contrary interpretation is reasonable is untethered from the text of the FCRA. Abandoning its previous reliance on Minnesota expungement law, Defendant's interpretation of the statute now relies on a distinction borrowed from sentencing and immigration law between a "fact of conviction" and a "record of conviction." Def.'s Mem. at 13.[5] Defendant does not cite any provision of the FCRA that would provide a basis for drawing this type of distinction, because there is no provision of the FCRA that distinguishes between a "fact" of an item of information and a "record" of an item of information. Instead, Defendant relies on federal criminal and immigration cases that rely on this distinction in discussing what a court may examine when determining a prior conviction qualifies for a sentencing enhancement or removal. Def.'s Mem. at 13-14 (citing, among others, *United States v. Spencer,* 724 F.3d 1133, 1138 (9th Cir. 2013); *Ragasa v.* Holder, ___ F.3d ___, 2014 WL 1661491, at *2 (9th Cir. Apr. 28, 2014)).[6] These cases have no bearing on

---

[5] This line of argument was apparently inspired by the Court's questions before oral argument wherein the Court asked Defendant if there was any Ninth Circuit law that supported its interpretation of the statute. Ex. M at 5 ("There is no Ninth Circuit case that addresses that issue in the context of the FCRA. However, after you asked the question, we dug deeper, and we did find a case that may shed some light on how the Ninth Circuit interprets the term.").

[6] Defendant describes *Spencer* as a removal case. *Spencer* was not a removal case, but a case about whether a criminal property damage conviction qualifies as a crime of violence for the purposes of determining whether to apply the "career offender" sentencing enhancement.

1   the FCRA and Defendant's attempt to use these cases as a basis for interpreting the FCRA is

2   unreasonable.

3        Defendant also cites FTC guidance about an obsolete provision of the FCRA, which

4   precluded reporting of "Records of arrest, indictment, or conviction of crime which, from date

5   of disposition, release, or parole, antedate the report by more than seven years."  Def.'s Mem.

6   at 16-17.  The FTC guidance stated that "[t]he term records means any information a *consumer*

7   *reporting agency* has in its files relating to arrest, indictment or conviction of a crime."   16

8   C.F.R. Part 600, Appx., at 559 (emphasis added).   This guidance, which, as Defendant

9   acknowledges, has been withdrawn, does not support Defendant's interpretation.  For one, the

10  guidance indicates that the term "records" refers to the records of the consumer reporting

11  agency, which is contrary to Defendant's argument that the term "records" refers to what is

12  contained in the public records at the courthouse.  Second, the guidance is pro-consumer in that

13  it takes a broad view of the information that cannot be reported.

14       Contrary to the FCRA's remedial purpose, Defendant takes this guidance, and gives it

15  an anti-consumer spin, arguing that Defendant can report any information that happens to be

16  included within the public record.   This construction is directly contrary to the liberal

17  construction of the FCRA demanded by its remedial, consumer-protective purpose.  *Guimond* ,

18  45 F.3d at 1333 (stating that the FCRA's "consumer oriented objectives support a liberal

19  construction of the FCRA" and "any interpretation of this remedial statute must reflect those

20  [consumer oriented] objectives"); *Cortez*, 617 F.3d at 722 (noting in rejecting defendant's

21  *Safeco* defense that "FCRA is undeniably a remedial statute that must be read in a liberal

22  manner in order to effectuate the congressional intent underlying it.").

23       Under Defendant's interpretation, a consumer reporting agency could report everything

24  that is in the public record of conviction, including records of arrests and other adverse

25  information that otherwise cannot be reported simply because they are mentioned somewhere

26  within the public record of conviction.  That is simply not a reasonable construction of the

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17
CASE NO. 2:13-CV-01915-MJP

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   FCRA.  *See Avila*, 2014 WL 3537825, at *3 ("Under [Defendant]'s interpretation, any adverse

2   information could be included in the report as long as it happened to be included on a 'record of

3   conviction.'  The Court is unwilling to construe the statute in this manner . . . .").

4         Defendant's reliance on the two out-of-circuit FACTA cases is misplaced.  Def.'s Mem.

5   at 19-20 (citing *Long v. Tommy Hilfiger, U.S.A., Inc.* 671 F.3d 371 (3d Cir. 2012); *Hammer v.*

6   *Sam's E., Inc.*, 754 F.3d 492 (8th Cir. 2014)).  Both of those cases are factually inapposite as

7   they involve the redaction of credit card information from receipts.  Neither deals with the

8   FCRA provision at issue here, 15 U.S.C. § 1681c, and simply have nothing to say about

9   whether stale, dismissed charges can be reported on a consumer report.

10  **II.   IN THE ALTERNATIVE, DEFENDANT'S MOTION SHOULD BE DENIED PURSUANT TO**

11        **RULE 56(D).**

12        **A.   Legal Standard.**

13        Fed. R. Civ. P. 56(d) provides, "If a nonmovant shows by affidavit or declaration that,

14  for specified reasons, it cannot present facts essential to justify its opposition, the court may:

15  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or

16  to take discovery; or (3) issue any other appropriate order."[7]  "This rule should be applied with

17  a spirit of liberality to prevent injustice to the party facing summary judgment."  *Gofron v.*

18  *Picsel Technologies, Inc.*, 804 F. Supp. 2d 1030, 1036 (N.D. Cal. 2011).  A Rule 56(d)

19  "'continuance of a motion for summary judgment for purposes of discovery should be granted

20  almost as a matter of course unless the non-moving party has not diligently pursued discovery

21  of the evidence.'"  *Burlington N. Santa Fe R.R. Co. v. The Assiniboine & Sioux Tribes of the*

22  *Fort Peck Reservation,* 323 F.3d 767, 773–74 (9th Cir.2003) (quoting *Wichita Falls Office*

23  *Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992)).  "Although Rule 56([d])

24  facially gives judges the discretion to disallow discovery when the non-moving party cannot

25

26  [7] Prior to the 2010 amendments to the Federal Rules of Civil Procedure, motions to conduct discovery in response to a pending summary judgment motion were made under Rule 56(f).  Fed. R. Civ. P. 56 adv. comm. nn. (2010) ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

27  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18
CASE NO. 2:13-CV-01915-MJP

yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 n.5 (1986)).

"[T]he denial of a Rule 56([d]) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). "Summary denial is especially inappropriate where the material sought is also the subject of outstanding discovery requests." *Id.*; *see also* 10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2741 (3d ed. 1988) (noting "[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party" and collecting authority). "If the court is satisfied with the reasons presented in the Rule 56([d]) affidavit as to why the party is not able to oppose the summary-judgment motion on the merits, the usual practice is to deny summary judgment without prejudice to the right to reapply at a later date." *Id.* § 2740.

### B.   If the Court Does Not Deny Defendant's Motion on the Existing Record, Plaintiff Should Be Granted Additional Discovery.

As set forth above, discovery on Defendant's policy regarding reporting of dismissed charges and its interpretation of the FCRA is ongoing.  Since filing its motion for summary judgment and after the depositions of Macapia and Cogdill, Defendant has produced over 25,000 pages of documents.  Bryden Decl. ¶¶ 7, 8.  Included within these belatedly-produced documents are the emails that demonstrate Defendant interpreted the FCRA to not allow the reporting of dismissed charges, including the internal emails among Defendant's employees and the emails to the vendors informing the vendors of the policy change.  *Id.* ¶ 10.  These

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 19
CASE NO. 2:13-CV-01915-MJP

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   documents demonstrate that Defendant's interpretation of the FCRA is not what Defendant

2   purports it to be in its motion, and show that Defendant's policy change was driven by FCRA

3   compliance concerns and not by the business reasons asserted in its motion.  In light of that

4   fact, and the fact that Defendant chose to file its motion in the middle of discovery and prior to

5   its production of documents which clearly undermine its arguments, the Court should deny

6   Defendant's motion now.

7          However, if the Court is disinclined to deny Defendant's motion based on the existing

8   record, Plaintiff should be allowed to continue to take further discovery regarding Defendant's

9   interpretation of the FCRA, including the depositions of Judy Fenney and Shana Nishihira, and

10  former Defendant employee Nadja Jaganjac, who edited Plaintiff's report to remove the

11  dismissed charge after Plaintiff requested her file.  Bryden Decl. ¶ 11; Cogdill Dep. at 62-63;

12  Macapia Dep. at 60, 70.  Because discovery regarding the issues raised in Defendant's motion

13  is ongoing, if this Court declines to deny Defendant's motion on the merits and with prejudice,

14  this Court should deny Defendant's motion without prejudice to be refiled after the close of

15  discovery.

16                                  **CONCLUSION**

17         Defendant's motion for partial summary judgment should be denied with prejudice.

18

19

20  Date: September 2, 2014                    NICHOLS KASTER, PLLP

21                                             By:  /s/ Daniel C. Bryden
22                                                E. Michelle Drake*
                                                  Email:  drake@nka.com
23                                                Daniel C. Bryden*
                                                  Email:  dbryden@nka.com
24                                                4600 IDS Center
                                                  80 South Eighth Street
25                                                Minneapolis, Minnesota 55402
                                                  Telephone:  (612) 256-3200
26                                                Facsimile:  (612) 215-6870

27

1

\*admitted *pro hac vice*

2

TERRELL MARSHALL DAUDT & WILLIE PLLC
Beth E. Terrell, WSBA #26759

3

Email:  bterrell@tmdwlaw.com
Erika L. Nusser, WSBA #40854

4

Email:  enusser@tmdwlaw.com
936 North 34th Street, Suite 300

5

Seattle, Washington 98103-8869
Telephone:  (206) 816-6603

6

Facsimile:  (206) 350-3528

7

*Attorneys for Plaintiff and Proposed Classes*

8

### CERTIFICATE OF SERVICE

9

10

I hereby certify that on September 2, 2014, I caused the foregoing to be electronically

11

filed with the Clerk of Court using the CM/ECF system which will send notification of such

12

filing to all counsel of record.

13

Date:  September 2, 2014          /s/Daniel C. Bryden_____

14

Daniel C. Bryden

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 21
CASE NO. 2:13-CV-01915-MJP