THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| HEATHER HALEY, as an individual and as a representative of the classes,<br><br>               Plaintiff,<br><br>    v.<br><br>TALENTWISE, INC. f/k/a/ TALENTWISE SOLUTIONS, LLC f/k/a INTELIUS SCREENING SOLUTIONS, LLC, ,<br>               Defendant. | Case No.  2:13-cv-01915-MJP<br><br>**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF INCENTIVE AWARD**<br><br>Note on Motion Calendar: June 5, 2015 |

## INTRODUCTION

In this sharply contested Fair Credit Reporting Act class action, Class Counsel defeated dispositive motions, reviewed over 50,000 pages of documents, deposed Defendant's Directors of Compliance and Screening Operations (among others), defended their Class Representative's deposition, retained and worked extensively with a database expert, and opposed a motion for partial summary judgment.  Shortly before a hearing on the summary judgment motion, the parties mediated and settled the action on favorable monetary terms, and agreed to significant prospective relief, a rarity in Fair Credit Reporting Act settlements.  Class Counsel now moves the Court for an award of attorneys' fees and costs that is significantly less than Class Counsel's actual fees and costs, does not include future fees related to overseeing

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  administration of the settlement, and which results in a *negative multiplier* of .75.  Not one of

2  the 20,605 Settlement Class members has objected to the settlement, and only one has opted

3  out.  Accordingly, it is reasonable to award the requested fee of 33 and 1/3% of the common

4  fund.  In addition, Class Counsel seeks an $8,000 service award for the Class Representative,

5  which is warranted given her significant time and effort and the results achieved in the action.

6  Accordingly, Class Counsel's motion should be granted.[1]

7  **BACKGROUND**

8  **I.    THE PARTIES ENGAGED IN EXTENSIVE LITIGATION, DISCOVERY, AND MEDIATION.**

9         **A.    Procedural History.**

10         On October 24, 2013, Plaintiff Heather Haley ("Plaintiff") filed her Class Action

11  Complaint against Defendant TalentWise, Inc. ("Defendant"), which asserted class-wide claims

12  under the Fair Credit Reporting Act ("FCRA").  *ECF No. 1*.  Defendant filed a motion to

13  dismiss and Plaintiff amended her Complaint in response.  *ECF Nos. 19, 22*.  Defendant then

14  moved again to dismiss the First Amended Complaint in full.  *ECF No. 24*.  After briefing and

15  oral argument, the Court granted in part and denied in part the motion to dismiss.  *ECF No. 38*.

16  Defendant moved to reconsider or in the alternative certify issues in the Order for interlocutory

17  review, which the Court denied.  *ECF Nos. 39, 40*.

18         The parties then engaged in extensive discovery, with Defendant producing over 50,000

19  pages of documents, which Class Counsel reviewed.  *Declaration of Daniel C. Bryden, ¶ 2*

20  *("Bryden Decl.")*.  Plaintiff deposed five of Defendant's employees, including its Director of

21  Compliance and Director of Screening Operations, and Defendant deposed Plaintiff.  *Id.*, ¶ 3.

22  Class Counsel also retained a database expert to assist in understanding how Defendant's

23  computer systems pull information from various sources to generate background reports on

24  members of the Classes.  *Id*.  There were a number of telephone calls between Class Counsel's

25

26  ---
[1] Plantiff is not submitting a proposed order with this motion because the relief requested will be incorporated within the proposed Final Approval Order that will be submitted at the appropriate time with Plaintiff's forthcoming Final Approval Motion.

27  PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 2
CASE NO. 2:13-CV-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

expert and Defendant's senior technology engineer wherein the parties discussed Defendant's databases and electronic records, and its ability to query those databases. *Id.* The parties also exchanged versions of the "scripts," or electronic algorithms, that they proposed to use to identify class members, and Plaintiff's expert vetted those proposals. *Id.* On July 11, 2014, Defendant moved for partial summary judgment, and the parties fully briefed that motion. *ECF Nos. 46-49, 53-57, 58-62.* While the motion for summary judgment was pending and a week before oral argument on the motion, the parties engaged in a full day mediation with the Honorable Paris Kallas on October 2, 2014. *Bryden Decl. ¶ 4.* At the conclusion of that mediation, the parties agreed to a settlement in principle and executed a terms sheet. In the following weeks, the parties drafted and negotiated a comprehensive settlement of the class claims asserted in this action, which was finally executed on December 19, 2014. *Id.*.

**B.      Summary of Plaintiff's Settled Claims Against Defendant.**

The settled claims relate to the reporting of criminal and motor vehicle information on employment screening reports issued by Defendant. Under the FCRA, a consumer report may not include records of arrest or other adverse items of criminal information other than "records of conviction" that antedate the report by more than seven years. 15 U.S.C. § 1681c(a)(2), (5). Plaintiff alleged that Defendant had violated this prohibition in two primary ways. First, Plaintiff alleged Defendant violated the FCRA by including a dismissed criminal charge from 2001 on Plaintiff's report. Defendant denied liability, claiming that because Plaintiff's dismissed charge was part of the same criminal case as charges on which Plaintiff was convicted, Defendant was allowed to report the dismissal because, in Defendant's view, the dismissal was part of the record of conviction. When this lawsuit was initiated, there was no controlling case law on whether Defendant's statutory interpretation argument had merit.

Second, Plaintiff alleged that Defendant's report inaccurately portrayed Plaintiff's DWI history. In 2011, Plaintiff was arrested and charged with a DWI and with refusing to take a Breathalyzer test. She was convicted of the DWI charge but the charge for refusing the

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 3
CASE NO. 2:13-CV-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   Breathalyzer was dismissed.  The alleged inaccuracy resulted from the fact that the report

2   stated that Plaintiff had been "convicted" of the charge for refusing the Breathalyzer in the

3   "DMV Driving Records" section of the report.  Plaintiff alleged that this charge was actually

4   dismissed, as stated in the "Criminal County Search" section of the report.  Plaintiff also

5   alleged the report was duplicative because it conveyed information about the same incident in

6   two different locations on the report, creating the misimpression that Plaintiff had been

7   involved in two separate DWI incidents, instead of a single incident.  Defendant denied liability

8   for producing an inaccurate or misleading report, arguing that the records reflected in the

9   "Criminal" and "MVR" sections of the report were in fact accurate, and that they were not

10  duplicative because they were from different agencies and reflected different consequences that

11  flowed from a single DWI incident.

12      Again, there was no controlling case law that established whether Defendant's legal

13  defense on this issue had merit.  Indeed, Defendant aggressively denied, and continues to deny,

14  both that its conduct violated the law, or that its conduct could be construed as willful given

15  Defendant's view that the statute is not clear, and given the lack of judicial or legislative

16  authority applying the provisions at issue to similar facts.  *See Def.'s Mot. Dismiss First Am.*

17  *Compl. at 10-15 (ECF No. 24); Def.'s Mot. Reconsideration at 1-4 (ECF No. 39); Def.'s Mot.*

18  *Partial Summ. J. at 18-20 (ECF No. 46).*

19  **II.    THE PARTIES' SETTLEMENT AGREEMENT.**

20      **A.    Overview of Terms and Settlement Administration.**

21      In consideration for the release of the claims of the members of the Settlement Classes,

22  Defendant will create a common fund for Class members consisting of $1.5 million.  The Class

23  members will not be required to take any action, such as filing a claim form, to be eligible to

24  receive a portion of the funds.  There are 20,605 members of the two classes, with 15,417

25  members of the Alleged Obsolete Information Settlement Class and 5,187 individuals are

26  members of the Alleged Duplicative Reporting Settlement Class.  *Affidavit of Kelly Kratz, ¶ 4*

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 4
CASE NO. 2:13-cv-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1    *("Kratz Aff.").*  The settlement therefore represents a gross recovery of approximately $83 for

2    each member of the Obsolete Information Settlement Class and approximately $41 for each

3    member of the Alleged Duplicative Reporting Settlement Class.  If the requested amounts are

4    granted for attorneys' fees, administrative expenses, and a Class Representative service award,

5    the parties anticipate that each Obsolete Information Settlement Class Member will receive a

6    payment of approximately $50 and each Alleged Duplicative Reporting Settlement Class

7    Member will receive $25.  If settlement checks are not cashed, no amount will revert to

8    Defendant.  Instead, the Settlement Agreement provides for those funds to be donated to two *cy*

9    *pres* recipients.  *Bryden Decl. ¶ 5 & Ex. 2.*

10       In addition, Defendant has agreed to significant non-monetary relief.  First, to alleviate

11   issues of duplicative reporting being potentially misleading to users of consumer reports,

12   Defendant has agreed to insert an explanatory note on its reports explaining the difference

13   between the Criminal section of the report and the Motor Vehicle section of the report, which

14   will alert users to the fact that those two sections of the report contain two different kinds of

15   records which may relate to a single incident.  Second, while Defendant maintains that its

16   policies always forbid the reporting of non-reportable outdated non-conviction information, in

17   light of the issues raised with compliance in this litigation, Defendant has agreed to further train

18   its quality assurance employees to ensure that those policies are fully explained and effectuated.

19   Lastly, Defendant's senior technical engineer engaged in a conference call where Class

20   Counsel and its database expert offered various suggestions regarding Defendant's quality

21   assurance processes.

22       **B.       The Reaction of the Classes to the Settlement.**

23       On February 10, 2015, postcard notices of the proposed settlement were mailed to the

24   20,605 members of the Settlement Classes.  *Kratz Aff., ¶ 8.*  In addition, Defendant's records

25   included email addresses for 8,842 Class members, and those individuals were also sent notice

26   of the settlement by email.  *Id., ¶ 9.*  A settlement website was also established at

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 5
CASE NO. 2:13-CV-01915

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

www.HaleyFCRASettlement.com, which includes key documents from the litigation and provides a 1-800 number that Class members could call to speak with the settlement administrator. *Id.*, *¶ 13*. When it is filed, the instant motion will also be posted on the website. As of March 30, 2015, no objections to the settlement had been received by the settlement administrator in response to the settlement notices, and only one Class member requested to opt out of the settlement. *Id. ¶¶ 15-16*. The deadline for members of the Settlement Classes to opt out or object is April 11, 2015.

## III.   CLASS COUNSEL'S LODESTAR AND COSTS TO DATE.

To date, Nichols Kaster, PLLP's lodestar is $604,781.50 and Terrell, Marshall, Daudt & Willie, PLLC's lodestar is $5,555.00, for a total of $610,336.50 in Class Counsel attorney fees. *Bryden Decl., Ex. 3*. Nichols Kaster also has $41,945.48 in out-of-pocket expenses for which it seeks reimbursement, a significant portion of which relates to the database expert expenses that were necessary to understanding Defendant's databases, how to identify Class members, and the prospective relief. *Bryden Decl.*, *¶ 6, Ex. 3*. In addition, Terrell, Marshall, Daudt & Willie incurred $1,513.90 in expenses. *Ex. 3*. The total out-of-pocket expenses for the two firms is $43,459.38.

The requested award of 33 and 1/3% of the common fund of $1.5 million would be $500,000, which is requested to cover both attorneys' fees and litigation expenses. If this award is granted, and the out-of-pocket expenses are reimbursed in full, then there will be $456,540.62 remaining to cover Class Counsel's lodestar of $610,336.50. The requested award thus results in a .75 multiplier of Class Counsel's lodestar, which is a "negative multiplier" because it is less than one and results in a fee award less than lodestar.

## ARGUMENT

## I.   CLASS COUNSEL IS ENTITLED TO REASONABLE ATTORNEYS' FEES.

It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 6
CASE NO. 2:13-CV-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  These principles are particularly important in complex litigation, where private enforcement is a necessary component of legal compliance.  *See*, *e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968).  Fee awards in successful cases, such as this one, encourage meritorious class actions, and thereby promote private enforcement and compliance with federal consumer protection laws such as the FCRA.

## II.  CLASS COUNSEL'S REQUESTED FEE AWARD IS REASONABLE UNDER THE LODESTAR METHOD.

In considering the amount of attorneys' fees for class counsel where there is a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Under either method, the court must exercise its discretion to achieve a "reasonable" result.  *Id.*  Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).

As discussed above, the requested fee award is significantly less than Class Counsel's lodestar, which makes the requested fee award reasonable.  *See In re Ferrero Litig.*, 583 F. App'x 665 (9th Cir. 2014) (approving award of fees using lodestar method).  In particular, the negative multiplier of .75 shows that the requested fee award is less than the typical fee award in complex class action settlements in this Circuit.  Multipliers of 1 to 4 are commonly awarded in complex class action cases.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 7
CASE NO. 2:13-CV-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  Cir. 2002) (finding that, in approximately 83 percent of the cases surveyed by the court, the

2  multiplier was between 1.0 and 4.0, with a "bare majority ... 54% ... in the 1.5–3.0 range").

3  Accordingly, the requested fee award is very reasonable under the lodestar method and ought to

4  be granted.

5  **III.    CLASS COUNSEL'S REQUESTED FEE AWARD IS REASONABLE UNDER THE**

6  **PERCENTAGE OF THE FUND METHOD.**

7         While the requested fee award is reasonable under the lodestar method and ought to be

8  granted for that reason, it is also a reasonable fee award under the percentage method.  When

9  using the percentage of the fund method, courts in the Ninth Circuit sometimes refer to 25% of

10 the common fund as the "benchmark," but routinely approve fee awards that exceed 25%.  *See,*

11 *e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal

12 to 33% of fund); *Walsh v. Kindred Healthcare,* 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013)

13 (awarding 30% of $8.25 million settlement fund in a consumer class action where additional

14 injunctive relief was obtained); *In re: TFT-LCD (Flat Panel) Antitrust*, No. 07-1827, 2013 WL

15 149692 (N.D. Cal. Jan. 14, 2013) (30%); *Dennings v. Clearwire Corp.*, 2013 WL 1858797, *6-

16 *8 (W.D. Wash. May 3, 2013) (approving fees amounting to 35.78% of the common fund);

17 *Meijer v. Abbott Laboratories*, 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).  Indeed, more

18 than one district court in this Circuit has recognized that "in most common fund cases, the

19 award exceeds [the twenty-five percent] benchmark."  *In re Omnivision Techs.*, 559 F. Supp.

20 2d 1036, 1047-48 (N.D. Cal. 2007) (referencing *In re Activision Securities Litig.*, 723 F. Supp.

21 1373, 1377-78 (N.D. Cal. Oct. 3, 1989), and stating that "nearly all common fund awards range

22 around 30% . . . [and] absent extraordinary circumstances that suggest reasons to lower or

23 increase the percentage, the rate should be set at 30%").[2]

---

24 [2] *See also Garner v. State Farm Ins.*, No. 08-1365, 2010 WL 1687832 (N.D. Cal. April 22, 2010) (awarding fee of
   30% of the $15 million settlement fund); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-3709, 2007 WL 1033478
25 (N.D. Cal. April 4, 2007) (30%); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming award equal to 33% of
   common fund); *Brailsford v. Jackson Hewitt Inc.*, No. 06-00700, 2007 WL 1302978 (N.D. Cal. May 3, 2007
26 (awarding fee equal to 30% of settlement fund); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2005 WL
   1594403, at *59, n.12 (C.D. Cal. June 10, 2005) (noting that more than 200 federal cases have awarded fees higher
27 than 30%); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-5515, 2005 WL 2435906, at *25-31 (E.D. Cal.

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 8
CASE NO. 2:13-CV-01915

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

In analyzing whether to award more than 25% of the common fund, courts in this Circuit look at: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; (8) non-monetary or incidental benefits, including helping similarly situated persons nationwide by clarifying certain laws; and (9) comparison with counsel's lodestar.  *See Vizcaino*, 290 F.3d at 1048–50; *Dickerson v. Cable Comm., Inc*., No. 3:12-cv-00012-PK, 2013 WL 6178460, *4 (D. Or. Nov. 25, 2013).  Applied here, these factors all support the requested award of fees and costs at 33 and 1/3% of the common fund.

### A.    Result Obtained.

The monetary relief achieved for the Settlement Classes is comparable to the relief achieved in similar FCRA class settlements.  As for the Obsolete Information Settlement Class, the most comparable case is the settlement in *King* wherein the court approved a settlement that will pay each class member around $50 after deductions for attorneys fees and costs.  *See King v. Gen. Info. Servs., Inc.* No. 2:10-cv-6850-PBT, Motion for Final Approval and Settlement at 7 (E.D. Pa. Oct. 24, 2014) (ECF No. 118) (seeking approval for settlement that will pay class members $50) and *King v. Gen. Info. Servs., Inc*,. No. 2:10-cv-6850-PBT, Final Judgment and Order of Dismissal (E.D. Pa. Nov. 4, 2014) (ECF No. 124) (approving settlement).  The settlement here is essentially the same as the result achieved in *King*, with Settlement Class members estimated to receive $50 after deductions for fees and costs.

With regards to the Alleged Duplicative Reporting Class, the estimated payment of $25 to each Class member is within the range of approved settlements that involve claims of duplicative reporting.  *See Ryals v. Hireright Solutions, Inc.* No. 3:09-cv-0625, Settlement Agreement at 28 (E.D. Va. July 1, 2011) (ECF No. 63-1) (seeking settlement amounts varying

---

September 30, 2005) (33.3% of the $2.52 million settlement in an employment class action); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 WL 450064, *20 (N.D. Cal. Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (32.8% fee) (decided after *Paul, Johnson*).

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 9
CASE NO. 2:13-CV-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1   from $15 to $82.50 to resolve allegations of duplicative reporting); and *Ryals v. Hireright*

2   *Solutions, Inc.* No.3:09-cv-0625, Final Order and Judgment (E.D. Va. Dec. 21, 2011) (ECF No.

3   123) (approving settlement).   The facts describing the claims which formed the basis of the

4   *Ryals* settlement are set forth in *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 430

5   (E.D. Pa. 2010), a case that was eventually consolidated with *Ryals*.   The plaintiffs in *Ryals* and

6   *Smith* alleged far more egregious reporting violations than those here, namely including the

7   same criminal incident three or four times on a single report.   *Id.*   Here, Plaintiff's claim and

8   the Alleged Duplicative Reporting Class are limited to those people whose reports included an

9   incident which was reported in both the Criminal and the MVR sections of the report, and

10  which Defendant would argue represents the fact that there were separate and non-duplicative

11  criminal and driver's license related consequences resulting from a single incident.

12  Nonetheless, the recovery here is comparable.

13          In addition to significant monetary relief, Class Counsel also achieved the significant

14  prospective relief detailed above.   The achievement of prospective relief in this settlement is

15  remarkable, as there is a significant difference of opinion among the district courts about

16  whether such relief is even available under the FCRA.   *Compare Engelbrecht v. Experian Info.*

17  *Servs., Inc.*, No. EDCV 12-01547 VAP, 2012 WL 10424896, at *4-5 (C.D. Cal. Nov. 6, 2012)

18  (finding that injunctive relief is available to private litigants for violations of the FCRA), *with*

19  *Gauci v. Citi Mortgage*, No. CV 11-01387 ODW JEMX, 2011 WL 3652589, at *3 (C.D. Cal.

20  Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain

21  injunctive relief under the FCRA.").   Whether or not quantified monetarily, the non-financial

22  benefits to the Settlement Classes of the injunctive relief are a relevant consideration to justify

23  an upward deviation from the benchmark.   *See Dennings*, 2013 WL 1858797 at*6-*8 (citing

24  *Staton v. Boeing Co.*, 327 F.3d 938, 945-46 (9th Cir. 2003) and approving fees amounting to

25  35.78% of the common fund where the settlement achieved substantial programmatic changes

26  and the lodestar cross-check resulted in a multiplier of less than 1).   "The question is not

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 10
CASE NO. 2:13-cv-01915

1    whether a dollar value can be associated with the injunctive relief, but whether that relief
2    benefits the class and at least ameliorates some of the alleged concerns raised by the
3    complaint." *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. Aug. 26, 2013).
4    That is certainly true here.

5        Moreover, not only was specific injunctive relief achieved, but this Court's decisions
6    denying Defendant's motions to dismiss and for reconsideration have become leading
7    authorities on the statutory construction issues litigated in this action. *See Dunford v. Am.*
8    *DataBank, LLC*, No. C 13-03829 WHA, 2014 WL 3956774, at *14 (N.D. Cal. Aug. 12, 2014)
9    ("[i]n light of the remedial purpose of the Act, this order now holds that only the actual
10   convictions may be reported and stale dismissed counts must be combed out and go unreported.
11   On this specific issue, this order accepts the view of plaintiff's counsel and Judge Pechman.");
12   *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3 (N.D. Ill. July 17,
13   2014) (citing this Court's Order in denying motion to dismiss similar dismissed charges claim
14   under the FCRA; holding that the "Court is unwilling to construe the statute" in a manner
15   inconsistent with this Court's Order). Accordingly, this litigation benefited (1) the Settlement
16   Classes; (2) future job applicants who are the subject of a report generated by Defendant; and
17   (3) job applicants more generally, by clariifying the law with respect to the reporting of
18   dismissed charges. Accordingly, this factor weighs heavily in favor of granting the requested
19   fee award.

20          **B.      Effort Expended by Counsel.**

21       This action was aggressively litigated by both sides before the parties settled. As
22   described above, the parties engaged in dispositive motion practice, extensive document
23   discovery, expert discovery, depositions, and a fully briefed motion for partial summary
24   judgment. The extent of the litigation is reflected in Class Counsel's records of the time it
25   spent litigating this action. *See Bryden Decl., Ex. 3*. Given the extensive time devoted to

26

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 11
CASE NO. 2:13-cv-01915

1 litigating this action, and the negative multiplier of Class Counsel's lodestar discussed above,

2 this factor weighs in favor of granting the requested fee award.

3       **C.**    **Counsel's Experience.**

4       Class Counsel is highly experienced in complex class action litigation and consumer

5 litigation in general. *See Bryden Decl., Ex. 4, Firm Resume*. Nichols Kaster was founded in

6 1974, and has deep roots in representing employees. *Id.* A large portion of Nichols Kaster's

7 current practice is concentrated on representing consumers in class action suits, including class

8 action suits under the FCRA. *Id.* The firm is currently lead or co-counsel in many class or

9 collective actions in state and federal courts across the country. *Id.* In a recent opinion

10 certifying a FCRA class for settlement purposes, and approving Nichols Kaster as class

11 counsel, Chief Judge Chasanow of the United States District Court for the District of Maryland

12 found that the "attorneys at Nichols Kaster, PLLP are qualified, experienced, and competent, as

13 evidenced by their background in litigating class-action cases involving FCRA violations."

14 *Singleton v. Domino's Pizza, LLC*, No. 11-cv-1823, 2013 WL 5506027 (D. Md. Oct. 2, 2013);

15 *see also Regalado v. Ryder Integrated Logistics, Inc.*, No. 2:12-cv-05737 (C.D. Cal. Nov. 7,

16 2013) (ECF No. 76) (approving class settlement in FCRA case with Nichols Kaster, PLLP as

17 class counsel); *Knights v. Publix Super Markets, Inc.*, No. 14-cv-720 (M.D. Tenn. Apr. 17,

18 2014) (ECF No. 72) (same); *Avila v. NOW Health Group, Inc.* No. 14-cv-1551 (N.D. Ill. Sept.

19 22, 2014) (ECF No. 76) (appointing Nichols Kaster class counsel and preliminarily approving

20 class settlement in FCRA case); *Ernst v. Dish Network, LLC*, No. 1:12-cv-08794, (S.D.N.Y.

21 July 23, 2013) (ECF No. 39) (appointing Nichols Kaster interim class counsel). In short, Class

22 Counsel is well-qualified to litigate a contentious FCRA class action such as this, and this

23 factor weighs in favor of granting the requested fee award.

24       **D.**    **Counsel's Skill.**

25       Class Counsel's litigation skills were necessary to bring this action to a successful

26 conclusion. At the outset of this litigation, the parties litigated a motion to dismiss that raised

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 12
CASE NO. 2:13-cv-01915

**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1    novel issues of statutory interpretation, which was resolved in Plaintiff's favor.  Class Counsel

2    also was able to locate key documents in a vast document production and use them to

3    Plaintiff's advantage in depositions and in opposition to Defendant's motion for summary

4    judgment.  Class Counsel overcame Defendant's aggressive litigation strategy, and ultimately

5    settled the matter on terms that are highly favorable to the Settlement Classes.  Accordingly,

6    this factor weighs in favor of granting the requested fee award.

7          **E.      The Complexity of the Issues.**

8          This action involved complex and novel issues of law relating to the construction of the

9    FCRA and the showing that a plaintiff must make to demonstrate a willful violation of the

10   FCRA.  As explained above, when this action was initiated, there was no controlling case law

11   that definitively held that a "record of conviction" does not include charges that were dismissed

12   in an action where other charges resulted in a conviction.  Similarly, there was no controlling

13   case law with respect to the allegations of duplicative reporting.  In addition, this action

14   presented complex factual issues, particularly with respect to Defendant's database systems and

15   how Class members could be identified for class certification and settlement administration.

16   This is why Class Counsel retained a database expert, took the depositions of two of

17   Defendant's database engineers, and had numerous expert-to-expert calls in order to understand

18   Defendant's database systems.  Accordingly, this factor weighs in favor of the requested fee

19   award.

20         **F.      The Risks of Non-Payment Assumed by Counsel.**

21         The risk taken on by Class Counsel in bringing this action was significant.  In *Safeco*

22   *Ins. Co. of America v. Burr,* the Supreme Court found that an absence of judicial or

23   administrative guidance can weigh against a finding of willfulness under the FCRA, and that a

24   company cannot recklessly violate the FCRA as long as it has actually relied on an objectively

25   reasonable interpretation of the statute.  *See* 551 U.S. 47, 69-70 (2007).  At the time Plaintiff's

26   report was issued, there was no court decision squarely holding that the FCRA forbid the

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 13
CASE NO. 2:13-cv-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1    reporting of a dismissed charge that antedated the report by more than seven years and was

2    associated with a charge that resulted with in a conviction.  Defendant raised the willfulness

3    issue in three motions, including in its motion for partial summary judgment which was

4    pending at the time of settlement.  *See Def.'s Mot. Dismiss First Am. Compl. at 10-15 (ECF*

5    *No. 24); Def.'s Mot. Reconsideration at 1-4 (ECF No. 39); Def.'s Mot. Partial Summ. J. at 18-*

6    *20 (ECF No. 46)*.  While Plaintiff does not believe that Defendant should have ultimately

7    prevailed on its *Safeco* defense, the defense presented a substantial risk to recovery.

8         Plaintiff also faced serious risks that the legal landscape would shift dramatically

9    against claims of this type during the pendency of this litigation.  In cases of this type, where

10   plaintiffs seek only statutory damages, defendants have often argued that Article III standing is

11   lacking.  This argument has been rejected by a number of courts, including the Ninth Circuit.

12   *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014); *Beaudry v. TeleCheck Servs., Inc.*, 579

13   F.3d 702 (6th Cir. 2009).  However, the defendants in the *Spokeo* case have petitioned for

14   certiorari to the Supreme Court, and the Supreme Court has shown interest in the case, asking

15   the Solicitor General to file a brief – an action which is often a precursor to the granting of

16   certiorari.[3]  The Court has come close to ruling on these issues in the past, granting certiorari in

17   a similar case, only to dismiss the writ as "improvidently granted."  *First Am. Fin. Corp. v.*

18   *Edwards*, 132 S. Ct. 2536 (2012).  Given the Supreme Court's apparent interest in this issue,

19   and the devastating effect an adverse ruling would have on this litigation, the risk assumed by

20   Class Counsel was significant and weighs heavily in favor of appoving the requested fee award.

21        **G.      The Reaction of the Settlement Classes.**

22        The reaction of the Settlement Classes has been overwhelmingly positive.  To date,

23   there is not one member out of the 20,605 Class members who has objected to the settlement

24

25   [3] *See* U.S. Supreme Court Invites Solicitor General's Views On Whether Certiorari Should Be Granted In Case Involving Standing To Recover Statutory Damages Absent Any Actual Damages, available at http://www.cfpbmonitor.com/2014/10/07/u-s-supreme-court-invites-solicitor-generals-views-on-whether-certiorari-should-be-granted-in-case-involving-standing-to-recover-statutory-damages-absent-any-actual-damages/ (last accessed April 3, 2015).

26

27   PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 14
CASE NO. 2:13-cv-01915

and only one has opted out.  *Kratz Aff., ¶¶ 15-16.*  In these circumstances, this factor weighs heavily in favor of granting the requested fee award.  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (where only 1 of 1,837 class members opted out and none objected, this factor favored awarding 33% of the common fund); *Razilov v. Nationwide Mut. Ins. Co. et al.*, No. 01-CV-1466, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (where 27 of 60,000 class members opted out, this factor weighed in favor of granting a fee award in excess of the 25% benchmark).

### H.    Non-Monetary Or Incidental Benefits, Including Helping Similarly Situated Persons Nationwide By Clarifying Certain Laws.

As discussed above, this action resulted in significant non-monetary benefits in that Defendant agreed to significant injunctive relief and this action played an important role in clarifying the law with respect to the reporting of dismissed charges.  Accordingly, this factor weighs heavily in favor of approving the requested fee award.

### I.    Comparison with Counsel's Lodestar.

A comparison with Class Counsel's lodestar further demonstrates that the requested fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted").  The purpose of the lodestar cross-check is as a tool to help assess whether special circumstances justify deviating from the benchmark fee award.  *See id.*; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942.  The "cross-check calculation need entail neither mathematical precision nor bean counting…. [courts] may rely on summaries submitted by the attorneys and need not review actual billing records."  *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516, at *21-22 (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).

Here, the cross-check shows that the 33 and 1/3% request will not result in a windfall to Class Counsel.  To the contrary, as discussed above, the lodestar cross-check results in a

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 15
CASE NO. 2:13-cv-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1  multiplier of .75, i.e., a *negative* multiplier.  Accordingly, this factor weighs heavily in favor of

2  granting the requested fee award.  *See Cordy v. USS-POSCO Indus.*, No. 12-cv-00553-JST,

3  2014 WL 1724311, at *2 (N.D. Cal. Apr. 28, 2014) (approving fee award of 30% of common

4  fund where lodestar exceeded requested fee and lodestar cross-check resulted in a multiplier of

5  .95); *Laguna v. Coverall North America, Inc.*, 2014 WL 2465049, at *2 (9th Cir. 2014)

6  (affirming district court decision to find attorneys' fee award to be fair, reasonable, and

7  adequate because "it was both significantly below the lodestar amount and represented an

8  unobjectionable percentage of recovery once the value of injunctive relief was considered.").

9  **IV.    CLASS COUNSEL SHOULD BE AWARDED COSTS.**

10       Class Counsel's out of pocket costs are reasonable and were necessary to the successful

11  conclusion of this litigation.  For example, Class Counsel requests reimbursement of the costs it

12  incurred to depose Defendant's witnesses, which were fundamental to litigating Defendant's

13  motion for partial summary judgment.  *See Bryden Decl., Ex. 3* (setting forth costs incurred by

14  Class Counsel).  In addition, Class Counsel incurred significant expert witness fees, which were

15  necessary to understanding how Defendant's computer systems generated reports on members

16  of the proposed classes, and to evaluating electronic methods and algorithms that could be used

17  to identify class members.  *Id.*  Other expenses include travel costs and expenses associated

18  with mediation.  These expenses are reasonable and routinely awarded.  *See, e.g., Wininger v.*

19  *SI Mgmt., L.P.*, 301 F.3d 1115, 1120–21 (9th Cir. 2002) (noting that "jurisdiction over a fund

20  allows for the district court to spread the costs of the litigation among the recipients of the

21  common benefit"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir.

22  1977); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)

23  ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common

24  fund are reimbursed proportionately by those class members who benefit by the settlement.");

25  H. Newberg, ATTORNEY FEE AWARDS § 2.19 at 69 (1986).  Accordingly, the Court should

26  award Class Counsel its fees incurred litigating this action.

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 16
CASE NO. 2:13-cv-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1    **V.       THE REQUESTED SERVICE AWARD IS APPROPRIATE AND REASONABLE.**

2            The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable

3    service awards.  *Staton*, 327 F.3d at 977; *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 958

4    (9th Cir. 2009) (service awards "are fairly typical in class action cases.").  Such awards are

5    intended to compensate class representatives for work done on behalf of the class, to make up

6    for financial or reputational risk undertaken in bringing the action, and to recognize their

7    willingness to act as private attorneys general. *Rodriguez*, 563 F.3d at 958-959.  Under *Staton*,

8    such awards should be evaluated using "relevant factors, includ[ing] the actions the plaintiff

9    has taken to protect the interests of the class, the degree to which the class has benefited from

10   those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation

11   . . . and reasonabl[e] fear[s] of workplace retaliation."  *Staton*, 327 F.3d at 977 (internal

12   quotation marks and citation omitted).

13           The Named Plaintiff here undertook significant risk and devoted substantial time to the

14   benefit of the Settlement Classes.  Ms. Haley feared that serving as the Named Plaintiff in this

15   action would impact her future employment opportunities because new employers might

16   discover her involvement, but she also wanted to correct what she saw as an injustice.

17   *Declaration of Heather Haley, ¶ 2 ("Haley Decl.").*  Accordingly, she agreed to bring this

18   action as a class action. *Id.*  Ms. Haley devoted significant time and energy to this action by

19   reviewing documents and pleadings, regularly communicating and meeting with Class Counsel,

20   assisting in responding to written discovery, and collecting relevant documents.  *Id.*, *¶¶ 3-5.*

21   Ms. Haley also spent significant time preparing for her deposition, and then flew from

22   Minnesota to Seattle for the deposition, which was the first time she had flown on an airplane

23   since she was 2 and ½ years old.  *Id.*, *¶ 4.*  The deposition was also highly stressful for Ms.

24   Haley as she found the process intimidating, and had to testify regarding difficult events from

25   long ago. *Id.*, *¶ 5.*  In short, Ms. Haley worked hard and devoted her time to serve the interests

26   of the Settlement Classes.

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 17
CASE NO. 2:13-cv-01915

1    Moreover, the requested service award of $8,000 is relatively modest compared to the

2    awards granted in other complex litigation in this Circuit.  *See, e.g.*, *Razilov. v. Nationwide*

3    *Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *2-4 (D. Or. Nov. 13, 2006)

4    (approving incentive award of $10,000 as reasonable); *Rausch v. Hartford Fin. Servs. Grp.*, No.

5    01-cv-1529, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (finding an incentive award of

6    $10,000 reasonable, when awards to unnamed class members were as little as $150); *Ralston v.*

7    *Mortgage Investors Group, Inc.*, No. 08-cv-536, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19,

8    2013) (approving service payment of $12,500); *In re Netflix Privacy Litig.*, No. 11-cv-379,

9    2013 WL 1120801, at *11 (N.D. Cal. March 18, 2013) (approving service payment of $6,000

10   for each of the class representatives); *Vedachalam v. Tata Consultancy Servs.*, No. 06-0963,

11   2013 WL 3929129, at *7 (N.D. Cal. July 18, 2013) (approving service awards of $25,000 and

12   $35,000 for class representatives); *Meijer, Inc. v. Abbott Labs*, No. 07-5985, ECF No. 514

13   (N.D. Cal. Aug. 11, 2011) (granting award of $60,000 per class representative on $52 million

14   settlement); *Lewis v. Wells Fargo* & Co., No. 08-2670, ECF No. 315 (N.D. Cal. April 29, 2011)

15   (approving service awards of $22,000 and $20,000 for named plaintiffs); *In re CV*

16   *Therapeutics*, 2007 WL 1033478, at *5 (approving $26,000 award "for reimbursement of time

17   and expenses incurred in representing the class").

18   Finally, this litigation would not have been possible without the Named Plaintiff's

19   involvement.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("Since without

20   a named plaintiff there can be no class action, such compensation as may be necessary to

21   induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal

22   but essential case-specific expenses, such as long-distance phone calls, which are

23   reimbursable.").  Ms. Haley ought to be compensated for initiating this meritorious litigation

24   that resulted in a very positive result for the Settlement Classes.

25

26

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 18
CASE NO. 2:13-cv-01915

## CONCLUSION

For the above reasons, Plaintiff requests that the Court: (1) grant Class Counsel an award of attorneys' fees and costs in the amount of 33 and 1/3% of the common fund; and (2) grant the Class Representative a service award of $8,000.

Date: April 3, 2015                              NICHOLS KASTER, PLLP

By:  /s/ Daniel C. Bryden
E. Michelle Drake*
Email:  drake@nka.com
Daniel C. Bryden*
Email:  dbryden@nka.com
4600 IDS Center
John G. Albanese*
Email: jalbanese@nka.com
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 256-3200
Facsimile:  (612) 215-6870
*admitted *pro hac vice*

TERRELL MARSHALL DAUDT & WILLIE PLLC
Beth E. Terrell, WSBA #26759
Email:  bterrell@tmdwlaw.com
Erika L. Nusser, WSBA #40854
Email:  enusser@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and the Settlement Classes*

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 19
CASE NO. 2:13-cv-01915

NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th St
Minneapolis, MN 55402
TEL. 612-256-3200 • FAX 612-338-4878

1

## **CERTIFICATE OF SERVICE**

2

 I hereby certify that on April 3, 2015, I caused the foregoing document to be

3

electronically filed with the Clerk of Court using the CM/ECF system which will send

4

notification of such filing to all counsel of record.

5

Date: April 3, 2015                          /s/Daniel C. Bryden

6

                                                                    Daniel C. Bryden

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF
INCENTIVE AWARD - 20
Case No. 2:13-cv-01915